IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE ALIGN TECHNOLOGY, INC. SECURITIES LITIGATION | Case No. 20-cv-02897-MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DISMISSING AMENDED COMPLAINT WITH LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** |

Before the Court is defendants Align Technology, Inc. ("Align"), Joseph M. Hogan ("Hogan"), John F. Morici ("Morici"), and Julie Tay's ("Tay") Motion, filed September 18, 2020, "to Dismiss Amended Class Action Complaint." Lead plaintiff Macomb County Employees' Retirement System has filed opposition, to which defendants have replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Amended Complaint ("AC"), plaintiff alleges Align "is a global medical device company" that designs, manufactures, and markets "Invisalign," a set of removable, plastic braces used "to treat misaligned teeth," and "iTero," a "mandibular scanner" that "allow[s] dentists to take extremely precise digital images of patients' teeth," which images are "then immediately sent electronically to Align to manufacture the plastic braces." (See AC ¶¶ 2, 20.) Plaintiff alleges Hogan, Morici, and Tay are officers of Align. (See id. ¶¶ 21-23.) Plaintiff further alleges that, between April 25, 2019, and July 24, 2019 ("the Class Period"), "[d]efendants repeatedly told

---

[1] By order filed January 25, 2021, the Court took the matter under submission.

investors . . . that [Align's] Invisalign sales growth in China remained strong at levels of approximately 70% annual growth as had been achieved in the prior two years," whereas, according to plaintiff, defendants "knew, or were deliberately reckless in disregarding, that Align's sales growth in China had materially decreased to a range of 20%-30%." (See id. ¶ 1.) Plaintiff alleges that, on July 24, 2019, Align announced its financial results for the second quarter of 2019 and "revealed" that growth in China, during that period, "had plummeted." (See id. ¶ 106.)

Based on the above allegations, plaintiff asserts the following three Claims for Relief: (1) a claim alleging, as against Align, Hogan, and Morici, violation of § 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a et seq., and Rule 10b-5 promulgated thereunder (Count I); (2) a claim alleging, as against Morici and Tay, violation of § 20A of the Exchange Act (Count II); and (3) a claim alleging, as against Hogan, Morici, and Tay, violation of § 20(a) of the Exchange Act (Count III).

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

//

//

2

# DISCUSSION

## I. Section 10(b) and Rule 10b-5

To plead a claim under § 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation (or omission); (2) scienter, i.e., a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss; and (5) 'loss causation,' i.e., a causal connection between the material misrepresentation and the loss." See Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-42 (2005) (emphases omitted) (internal citations omitted). Claims brought under § 10(b) and Rule 10b-5 must also meet the particularity requirements of Rule 9(b) of the Federal Rules of Civil Procedure, see Fed. R. Civ. P. 9(b) ("In alleging fraud . . . , a party must state with particularity the circumstances constituting fraud."); Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985) (applying Rule 9(b) to claim made under § 10(b) and Rule 10b-5), and, in addition to alleging the "time, place and nature of the alleged fraudulent activities," must "plead evidentiary facts" sufficient to establish any allegedly false statement "was untrue or misleading when made," see Fecht v. Price Co., 70 F.3d 1078, 1082 (9th Cir. 1995) (emphasis omitted) (internal quotations and citations omitted).

Further, such plaintiff must meet the heightened pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which requires the plaintiff to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." See 15 U.S.C. § 78u-4(b)(1). Additionally, to the extent an allegation is based on information and belief, the plaintiff must allege "with particularity all facts on which that belief is formed," see id., and, in so doing, must "reveal the sources of [its] information," see In re Daou Sys., Inc., 411 F.3d 1006, 1015 (9th Cir. 2005) (internal quotation and citation omitted).

In the instant action, plaintiff alleges that various statements made during the Class Period by Hogan and Morici on a conference call and at a number of "healthcare industry conferences hosted by the research divisions of various financial institutions" (see AC ¶ 94), as well as a statement in Align's Form 10-Q filed with the Securities

Exchange Commission ("SEC") on May 2, 2019, were "false and misleading" (see id. ¶ 84). As set forth below, the Court finds plaintiff has failed to plead facts sufficient to support those allegations.[2]

### A. Statements of Corporate Puffery and Optimism

Defendants contend "[n]early all of the challenged statements are quintessential inactionable statements of corporate optimism." (See Mot. at 8:7-8.)

"Statements of mere corporate puffery, 'vague statements of optimism like "good," "well-regarded," or other feel good monikers,' are not actionable because 'professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives.'" Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1060 (9th Cir. 2014) (quoting In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010)).

"The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions." City of Sunrise Firefighters' Pension Fund v. Oracle Corp., No. 18-cv-04844-BLF, 2019 WL 6877195, at *9 (N.D. Cal. Dec. 17, 2019) (citation omitted). Consequently, courts have characterized as non-actionable puffery such statements as "[w]e're doing well and I think we have a great future," "[e]verything is clicking [for the 1990s]," "[n]ew products are coming in a wave, not in a trickle," and "[o]ld products are doing very well." See In re Syntex Corp. Sec. Litig., 855 F. Supp. 1086, 1095 (N.D. Cal. 1994) (alterations in original); see also, e.g., Police Ret. Sys. of St. Louis, 759 F.3d at 1060 (affirming dismissal of complaint where defendant "communicated optimism" by stating that "the opportunity for system placement at hospitals 'is still very, very large'" and "there is potential for growth in the . . . market [for defendant's product]"; finding statements constituted "non-actionable puffing" (internal

---

[2] Based on this finding, the Court does not address herein whether plaintiff has sufficiently alleged facts that raise a "strong inference" that defendants acted with scienter, i.e., were "deliberately reckless" or engaged in "conscious misconduct." See DSAM Glob. Value Fund v. Altris Software, Inc., 288 F.3d 385, 388-89 (9th Cir. 2002) (internal citations omitted).

4

quotation and citation omitted)); City of Sunrise Firefighters' Pension Fund, 2019 WL 6877195, at *9 (dismissing complaint where claims based on "non-actionable" statements such as "[w]e continue to see tremendous growth across our cloud business," "[c]ustomer adoption of our cloud products and services continues to be very strong," and "what we have called our on-premise business remains robust"; holding statements "amount to nothing more than puffery" (alterations in original)).

     Here, the majority of the allegedly false and misleading statements constitute non-actionable puffery.[3]  First, plaintiff alleges Hogan, during a conference call regarding Align's earnings results for the first quarter of 2019 and held April 24, 2019 ("April 2019 Conference Call"), stated, "[w]e still have a great business in APAC from a growth standpoint overall" and "China is a great growth market for us."  (See AC ¶¶ 86-89.) Similarly, plaintiff alleges, Morici, during a presentation at a Bank of America Merrill Lynch Health Care Conference held May 14, 2019 ("May 2019 Bank of America Conference"), stated: "China . . . gets a lot of attention.  And rightly so, it's a huge market opportunity for us."  (See id. ¶ 95 (ellipsis in original) (emphasis omitted).)  Next, plaintiff alleges, Morici, during a presentation at a Stifel Dental and Veterinary Conference held May 29, 2019 ("May 2019 Stifel Conference"), stated, "we see tremendous growth in APAC, in China in particular," "we're seeing tremendous growth," "[t]he dynamics in China are really good for us," and "the appetite for growth and new technology adoption in China has been great for us[,] [a]nd . . . the economics work well for us."  (See id. ¶¶ 98-101.)  Lastly, plaintiff alleges Morici, during a presentation at a Jefferies Healthcare Conference held June 5, 2019 ("June 2019 Jefferies Conference"), stated, with respect to China, "[g]reat economics there" and "[i]t's . . . a market that's growing significantly for us."  (See id. ¶¶ 103-04.)

     The above-quoted statements constitute general expressions of optimism using such "subjective or emotive terms," see In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130,

---

[3] The remainder, as discussed later herein, have not been shown to be false.

1144 (9th Cir. 2017), as "great growth market," "tremendous growth," "growth . . . in China has been great," and "great economics" (see AC ¶¶ 89, 99, 101, 103), all of which are "incapable of objective verification," see City of Sunrise Firefighters' Pension Fund, 2019 WL 6877195, at *9 (internal quotation and citation omitted); see also Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1275 (9th Cir. 2017) (holding statement, "to be misleading, . . . must be capable of objective verification"; characterizing "puffing" as "expressing an opinion rather than a knowingly false statement of fact" (internal quotations and citations omitted)).

      Although statements of optimism "may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly," see Quality Sys., 865 F.3d at 1143 (internal quotation and citation omitted), here, there is no dispute that, at the time the above-referenced statements were made, Align's business in China was growing. See City of Sunrise Firefighters' Pension Fund, 2019 WL 6877195, at *9 (holding defendant's statement that "[w]e continue to see tremendous growth across our cloud business" constituted non-actionable puffery where "the fact that [defendant's] Cloud business was growing [was] not in dispute" (internal citation omitted)); see also Wochos v. Tesla, Inc., 985 F.3d 1180, 1196 (9th Cir. 2021) (holding statement that "'great progress' was being made on battery production" was not actionable; finding statement "would potentially be an actionable false statement only if . . . [defendant] had been 'making no progress at all'").

      Plaintiff contends the above-quoted statements nonetheless are actionable in light of Tay's announcement, on March 1, 2019, that "China is our second largest market, and our fastest growing country market with approximately 70 percent annual growth rate." (See AC ¶ 4 (emphasis omitted).)[4]  In particular, citing Quality Systems, plaintiff argues the statements here at issue created the "false impression that growth in China"

---

[4] Plaintiff does not contend this statement was false.

6

continued to be "approximately 70%." (See Opp. at 8:16-17.)

Plaintiff's reliance on Quality Systems is, however, misplaced, as the statements at issue therein, unlike the statements here at issue, "provided a concrete description of the past and present state of the [defendant company's] [sales] pipeline." See Quality Sys., 865 F.3d at 1144. In particular, the defendants in Quality Systems "repeatedly reassured investors during the class period that the number and type of prospective sales in the pipeline was unchanged, or even growing, compared to previous quarters." See id. As listed by the Ninth Circuit, the statements constituting such reassurance included the following: "more than half the large practice market, more than 75% of the midsize practice market is still fair game for new system sales"; "[t]here is nothing drying up and there is nothing slowing down"; "[o]ur pipeline continues to build to record levels"; "[i]t's very consistent, and there's nothing out of character in the pipeline that we're reporting today versus what we have seen there the past couple of years"; and "[s]ales cycle has not lengthened for us across the board." See id. at 1143-44 (noting company's CEO "did not just say that he believed plenty of opportunities for new system sales existed; he told investors what proportion of the large and mid-sized practice markets he believed were greenfield").

Here, by contrast, the challenged statements did not purport to compare Align's then-current growth in China with Align's prior "70 percent annual growth rate," a percentage that was last reported nearly two months before the start of the Class Period and not referenced again, either by repetition or comparison. (See AC ¶ 4.)

Next, pointing to the reactions of Wall Street analysts following Align's announcement that growth in China had declined to below 30% for the second quarter of 2019, plaintiff contends the challenged statements do not constitute puffery because the analysts interpreted those statements to mean growth in China was, when the statements were made, approximately 70%. (See Opp. at 10:15-24.) An analyst's interpretation of a defendant's statements, however, "cannot transform corporate optimism into a securities violation" because, "[a]bsent an actionable misstatement, reliance does not come into

7

play." See Police Ret. Sys. of St. Louis, 759 F.3d at 1060-61 (rejecting plaintiff's argument that, "because [the statements at issue] were in fact relied on by investors," said statements did not constitute puffery (emphasis omitted)).

Accordingly, the Court finds the above-quoted statements by Hogan and Morici constitute non-actionable corporate optimism, i.e., puffery.

### B.     False Statements

Defendants argue plaintiff has failed to sufficiently plead facts showing the statements at issue were false when made. In considering whether plaintiff has met such burden, the Court addresses, in turn, each of the statements that do not constitute corporate puffery.

#### 1.     April 2019 Conference Call

Plaintiff alleges Hogan, during the April 2019 Conference Call, stated "[w]e lead in China, Straumann's[5] move with third- or fourth-tier player from a clear aligner standpoint, I don't see that as dramatic effect on this market now." (See AC ¶ 88 (emphasis omitted).)[6] Plaintiff contends Hogan's statement was false because, according to plaintiff, Align's internal "data, both at the time and before the Class Period, indicated that Straumann's entry into the market coincided with growth in China hitting a wall" (see Opp. at 14:22-24), and because a former Finance Manager at Align, who plaintiff identifies as "FE 5," allegedly told plaintiff he/she was "included on an email during 4Q2018 where Morici asked Tay about the reason Align missed its internal forecasts in China," and Tay responded that the miss was due to "more competition" (see AC ¶¶ 75 n.20, 77).

Even if Straumann's entry in the China market coincided with a slowdown in

---

[5] According to plaintiff, the Straumann Group ("Straumann") is one of Align's competitors. (See AC ¶ 45.)

[6] Hogan's full statement was: "[w]e lead in China, Straumann's move with third- or fourth-tier player from a clear aligner standpoint, I don't see that as dramatic effect on this market now or in the immediate future at all." (See AC ¶ 88.) Plaintiff, in its Opposition, clarifies it is alleging only the non-forward-looking portion of Hogan's statement, i.e., "I don't see that as dramatic effect on this market *now*" (see Opp. at 15:6-7 (emphasis in original)), constitutes an actionable false statement.

8

Align's growth in China, however, plaintiff fails to allege any facts supporting a finding that the alleged slowdown was caused by Straumann's presence in that market, and thus, the timing of Straumann's entry does not suffice to show Hogan's statement was false when made.  Next, even assuming FE 5 had sufficient knowledge upon which to base his/her report, see Daou, 411 F.3d at 1015 (holding confidential witnesses may be used to support allegations if those "sources are described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged and the complaint contains adequate corroborating details" (internal quotations and citation omitted)), Tay's remark about more competition assertedly was made prior to the month in which Straumann is alleged to have entered the China market (see AC ¶ 45), and thus fails to show Hogan's statement was false when made.

### 2. May 2019 Bank of America Conference

Plaintiff alleges Morici stated, at the May 2019 Bank of America Conference, "I should mention though that we've seen competition, whether it's in China or U.S. or other places, we've been competing against many of these companies that I mentioned for a number of years and still been able to grow as we have." (See AC ¶ 97.)  Plaintiff contends Morici's statement was false because, in making that statement, he "represented that competition was not materially affecting Align's growth." (See id.)  Morici did not, however, purport to claim Align's competitors had no material effect on Align's growth, and, indeed, before he made the above-cited statement, Align had been reporting declining growth in China. (See id. ¶ 43.)  Thus, plaintiff has failed to show Morici's statement was false when made.  See Wochos, 985 F.3d at 1193 (rejecting plaintiff's interpretation of defendant's allegedly false and misleading statement where interpretation unsupported by statement itself; noting plaintiffs had essentially "rewrit[ten]" defendant's statement).

### 3. Form 10-Q Filed May 2, 2019

Plaintiff alleges Align, in its Form 10-Q filed with the SEC on May 2, 2019, stated "[d]emand for our products may not increase as rapidly as we anticipate due to a variety

9

of factors including a weakness in general economic conditions." (See AC ¶ 90.) Plaintiff contends the statement was false because, according to plaintiff, the risk of lower demand for Align's products in China had already materialized by the time the statement was made. (See id.) In other words, plaintiff is not contending defendants' cautionary statement was itself false but, rather, that it was misleading by reason of information it omitted, a theory the Court addresses later herein.

### 4. May 2019 Stifel Conference

Plaintiff alleges Morici stated, at the May 2019 Stifel Conference:

> The dynamics in China are really good for us. It is higher ASP.[7] They start with a higher list price. They have very complicated cases, comprehensive cases, and we've invested from a treatment planning to be in country, speak the same language, reduce the cycle time between having iTero in China. We introduced that in second quarter of last year. We went from almost no cases sent digitally to almost 50% of the cases sent digitally within China. So the appetite for growth and new technology adoption in China has been great for us. And as you mentioned, the economics work well for us.

(See AC ¶ 101.) Plaintiff contends Morici's statement was false because, according to plaintiff, at the time the statement was made, (1) growth in China had declined to less than 30% and (2) the time between when a scan was completed using iTero and when a subsequent sale was made "significantly exceeded the typical two week period" (see id.), which metric indicated "growth in China had slowed dramatically" (see id. ¶ 72).

As discussed above, Morici's above-quoted statement constitutes, in part, non-actionable puffery, namely, his statements that "[t]he dynamics in China are really good for us" and "the appetite for growth and new technology adoption in China has been great for us[,] [a]nd . . . the economics work well for us." As to the remaining portions, plaintiff has failed to allege any facts, let alone sufficient facts, showing those portions were false when made. Specifically, none of the allegations in the AC purport to challenge Morici's characterization of the aspects of the China market that he actually discussed, namely, ASP, list price, the "complicated" and "comprehensive" nature of cases, Align's

---

[7] "ASP" is an acronym for average sale price. (See AC ¶ 37.)

10

investment in that market, the "cycle time" for a given case, and the percentage of cases that use iTero scans. (See AC ¶ 101.)

### 5. June 2019 Jefferies Conference

Plaintiff alleges Morici, at the June 2019 Jefferies Conference, stated, with respect to China, "[g]reat economics there from the standpoint that massive population, growing middle class, we have higher list prices, higher ASPs in China, very complicated cases, a lot of orthodontists that we sell to, selling more and more to hospitals." (See AC ¶ 103.) As discussed above, one part of Morici's statement, specifically, "[g]reat economics there," constitutes non-actionable puffery. As to the remaining portions, plaintiff has failed to allege any facts showing falsity. In particular, as noted earlier, there are no allegations in the AC that purport to challenge Morici's characterization of the aspects of the China market he discussed, specifically, list price, ASP, the "complicated" nature of cases, sales to orthodontists, and sales to hospitals. (See id.)

### 6. June 2019 Goldman Sachs Conference

Plaintiff alleges Morici, during a presentation at a Goldman Sachs Global Healthcare Conference held June 11, 2019 ("June 2019 Goldman Sachs Conference"), made the following false and misleading statement: "China follows a similar practice as in the U.S. and so on, where having a scanner and having a scan will lend itself to more Invisalign volume. . . . But China is no different from the standpoint that when you have an iTero and you really include that as part of their digital workflow and ecosystem, that drives higher and higher amount of Invisalign volume." (See AC ¶ 105 (ellipsis in original).) Plaintiff contends the above statement was false because, at the time the statement was made, "the percentage of scans that resulted in sales [in China] was substantially lower than in the U.S. and . . . the time between a scan and sale had dramatically increased in China." (See id.)

Plaintiff has failed, however, to allege any facts showing the percentage of iTero scans that resulted in sales was, at the time the statement was made, lower in China than in the United States. Moreover, as defendants point out, Morici, in his statement,

11

neither purported to compare those percentages nor to address the amount of time between an iTero scan and subsequent sale.  Rather, Morici described how the China market is similar to other markets, including the United States, in that the introduction of iTero leads to increased sales as compared with sales prior to the introduction of iTero.  Plaintiff fails to allege any facts to the contrary, and, indeed, Align's undisputed growth in China during the Class Period appears to be consistent with Morici's statement.

### 7. Conclusion: False Statements

Plaintiff has failed to allege facts sufficient to show defendants made a material misrepresentation.

### C. Omissions

As noted, plaintiff argues defendants, when making the above-referenced challenged statements, "concealed that [Align's] growth in China had substantially declined as of the beginning of the Class Period, and Align was facing a consumer backlash, a tougher consumer environment, and competition that was materially affecting growth in China." (See Opp. at 15:9-12 (internal quotations and citations omitted).)  In that regard, plaintiff contends that defendants, in making those statements, chose to "tout positive facts about China," which, according to plaintiff, "created a duty to disclose negative facts in order to make the statements not misleading." (See id. at 15:14-16.)

"To be actionable under the securities laws, an omission must be misleading." See Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002).  "[I]n other words it must affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists."  Id.  "Silence, absent a duty to disclose, is not misleading."  Basic, Inc. v. Levinson, 485 U.S. 224, 239 n.17 (1988).

Here, defendants contend, plaintiff has failed to show any alleged omission created an impression of a state of affairs that differed from the actual state of affairs.  In particular, defendants argue, plaintiff has failed to sufficiently allege there was, as plaintiff asserts, "a 'substantial[] decline[]' in growth in China as of April 25, 2019," the start of the Class Period. (See Mot. at 13:6-8 (quoting AC ¶¶ 89, 95, 99-101, 103-105).)  In

response, plaintiff contends the alleged omissions are actionable because, after the Class Period, defendants "admitted" growth in China had substantially declined by the beginning of the Class Period due to "consumer backlash" and a "tougher consumer environment." (See Opp. at 15:21-16:1.)

In particular, plaintiff alleges a Wall Street analyst commented, during an earnings call regarding Align's financial results for the second quarter of 2019, "you guys were at a lot of conferences through mid-June with the message that everything seemed okay," to which Hogan responded, "I think China was by far was one where—when you got to June and all, it was more difficult than what we had anticipated. . . . It just didn't materialize." (See AC ¶¶ 109-10 (ellipsis in original).) Plaintiff contends Hogan, in making that statement, "implicitly admitted" defendants knew growth in China had substantially declined in April and May but believed sales in June would compensate for that decline. (See Opp. at 20:16-20.) Plaintiff also alleges Morici, during that same call, stated "we had some slowdown primarily China, in June," which statement, plaintiff argues, shows Morici, like Hogan, knew about the declining growth in China as early as April 2019. (See AC ¶ 110.) Further, according to plaintiff, Hogan attributed the decline of growth in China to "consumer backlash" and a "tougher consumer environment" in that market. (See id. ¶¶ 107, 112.)

As the Ninth Circuit has observed, a plaintiff can establish the falsity of an earlier statement "by means of a later statement by the defendant," where the later statement is "similar to 'I knew it all along.'" See Yourish v. Cal. Amplifier, 191 F.3d 983, 996 (9th Cir. 1999). Assuming the same ruling would apply equally to an alleged omission, plaintiff's reliance thereon is, nonetheless, unavailing here, as neither Hogan's nor Morici's above-quoted statements can reasonably be said to resemble an "'I knew it all along' admission." See id. at 997; see also Lopes v. Fitbit, Inc., No. 18-CV-06665-JST, 2020 WL 1465932, at *11 (N.D. Cal. Mar. 23, 2020) (holding, "[a]n after-the-fact statement does not constitute an admission unless it contradicts the substance of an earlier statement and essentially states 'I knew it all along'" (internal citation omitted)).

Specifically, Hogan and Morici stated only that, during the second quarter of 2019, defendants expected sales to materialize in China, and that, sometime in June, during which Align experienced "some slowdown" in sales, defendants learned making those sales in China would be more difficult than they had initially anticipated. Such revelations do not, contrary to plaintiff's assertion, show Align's growth in China had fallen to less than 30% by a particular time during that quarter, let alone by the beginning of the Class Period.

In sum, plaintiff has failed to plead an actionable omission. See Yourish, 191 F.3d at 997 (finding it "clearly insufficient for plaintiffs to say that [a] later, sobering revelation[] make[s] [an] earlier, cheerier statement a falsehood" (alterations in original) (internal citation omitted)).[8]

D.   Conclusion: Section 10(b) and Rule 10b-5

In sum, plaintiff has failed to sufficiently allege defendants made an actionable material misrepresentation or omission, and, consequently, has failed to state a claim under § 10(b) or Rule 10b-5.

II.   Sections 20(a) and 20A

As noted, plaintiff asserts, as against Hogan, Morici, and Tay, a violation of § 20(a) of the Exchange Act, and asserts, as against Morici and Tay, a violation of § 20A of the Exchange Act.

Under § 20(a), any person who controls a person liable for violating the Exchange Act is jointly and severally liable for such violation, see 15 U.S.C. § 78t(a); under § 20A, any person who violates the Exchange Act "by purchasing or selling a security while in possession of material, nonpublic information" is subject to liability thereunder, see 15 U.S.C. § 78t-1(a). "[T]o prevail on . . . claims for violations of § 20(a) and § 20A," however, "[a] plaintiff[] must first allege a violation of § 10(b) or Rule 10b-5." See Lipton

---

[8] In light of this finding, the Court does not address herein defendants' argument that Align adequately disclosed growth in China would not remain at 70%.

v. Pathogenesis Corp., 284 F.3d 1027, 1035 n.15 (9th Cir. 2002).

Here, as discussed above, plaintiff has failed to state a claim under § 10(b) or Rule 10b-5, and, consequently, such failure precludes plaintiff from stating a claim under § 20(a) or § 20A.

## CONCLUSION

For the reasons set forth above, defendants' motion to dismiss is hereby GRANTED, and the AC is hereby DISMISSED with leave to amend.  Plaintiff's Second Amended Complaint, if any, shall be filed no later than April 26, 2021.

In light of the above, the Case Management Conference is hereby CONTINUED from April 30, 2021, to June 18, 2021.  A Joint Case Management Conference Statement shall be filed no later than June 11, 2021.

**IT IS SO ORDERED.**

Dated: March 29, 2021

MAXINE M. CHESNEY
United States District Judge